# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
June 23, 2016

*In re* W.X. JOHNSON, Minor.

No. 330058
St. Joseph Circuit Court
Family Division
LC No. 2014-000399-NA

Before: STEPHENS, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

Respondent mother appeals as of right the trial court order terminating her parental rights to the minor child under MCL 712A.19b(3)(g) (failure to provide proper care and custody) and (3)(j) (reasonable likelihood of harm).[1] We affirm.

## I. BACKGROUND

W.X. was born on May 6, 2014, and tested positive for amphetamines and methamphetamine. Respondent tested positive for amphetamines, methamphetamines, and marijuana. On May 8, 2014, Children's Protective Services (CPS) filed a petition requesting that W.X. be removed from respondent's care because he tested positive for drugs at birth. A preliminary hearing was held later that day. Respondent admitted that she and W.X. tested positive for drugs. The court authorized the petition and placed W.X. in the temporary care and custody of the Department of Health and Human Services (DHHS). On May 9, 2014, W.X. was placed with foster parents. Respondent plead guilty to second degree child abuse on December 1, 2014, due to exposing W.X. to narcotics in utero and was sentenced to 19 months to 10 years' imprisonment. Respondent was incarcerated until March 2016.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent first argues that there was insufficient evidence to find a statutory ground for termination of her parental rights. We disagree. "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for

---

[1] The trial court declined to terminate under MCL 712A.19b(3)(h) (imprisonment for more than two years).

-1-

termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). This Court reviews the trial court's determination for clear error. *Id*.; MCR 3.977(K). "A finding is 'clearly erroneous' if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong. . . ." *In re Sours*, 459 Mich 624, 633; 593 NW2d 520 (1999) (quotation marks and citation omitted). Further, this Court gives "deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App at 459.

With respect to MCL 712A.19b(3)(g), termination is appropriate when "[t]he parent, without regard to intent, fails to provide proper care and custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

Respondent admitted at the preliminary hearing that she and W.X. tested positive for drugs. Respondent later admitted at her psychological evaluation, to being addicted to and using heroin while she was pregnant with W.X. Respondent pleaded guilty to second-degree child abuse for her drug use while she was pregnant. Given these facts, respondent failed to provide for the proper care and custody of W.X. With respect to respondent's future ability to care for the child, respondent in a letter to the trial court, that was admitted at the termination hearing, stated that she had been using heroin for six years. In order to rectify the condition that caused W.X. to enter care, DHHS drafted a parent agency treatment plan that required respondent to complete a substance abuse evaluation, attend counseling and participate in drug screens. See *In re HRC*, 286 Mich App at 462 ("Generally, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan."). Respondent attended her substance abuse evaluation but did not benefit because she failed to attend any sessions thereafter. She was terminated from counseling for lack of attendance. Respondent did not return to counseling until she was incarcerated on the child abuse charges on December 1, 2014. While on bond for the months of August and September of 2014, respondent was scheduled to provide drug screens on 18 occasions. Respondent tested negative two times, positive five times, did not appear two times, and for nine dates, there was no logged result in the testing record from the reporting center. At respondent's psychological evaluation, in September 2014, she indicated that she was on her third attempt to become clean and that her addiction led to the breakdown of the relationship with the father of her other children. Respondent returned to abusing substances after her release from jail in August 2014. We acknowledge that respondent was drug free while under the custody of MDOC. However, given respondent's history of substance abuse and relapses, the court did not err in finding that there was no reasonable expectation that respondent would be able to provide proper care and custody to W.X. within a reasonable time considering W.X.'s young age. Respondent's argument that she relapsed in August due to the trauma of the child abuse charges is unavailing. First, respondent admitted to her social worker that her relapse pre-dated awareness of the charges. More importantly, respondent failed to engage in the treatment that would have addressed her drug issues. "This Court has held that a parent's failure to comply with the parent-agency agreement is evidence of a parent's failure to provide proper care and custody for the child." *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003). The respondent did not offer the court any evidence of a family support network to support her post-

-2-

release recovery. In fact, she did not offer any potential family supports, albeit in Arizona, to care for the infant W.X. Other than optimistic speculation, this record does not contain anything upon which the trial court could have determined that respondent upon release would have a productive and successful recovery. The trial court did not clearly err in finding that there was sufficient evidence to establish this statutory ground. *In re VanDalen*, 293 Mich App at 139.

In addition to the above arguments, respondent also relies on *In re Mason*, 486 Mich 142, 160; 782 NW2d 747 (2010), which held that "[t]he mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." In *In re Mason*, 486 Mich at 163, the children were already placed with the father's family by request when the termination trial occurred. The *Mason* Court explained that, "the court never considered whether respondent could fulfill his duty to provide proper care and custody in the future by voluntarily granting legal custody to his relatives during his remaining term of incarceration." *Id*. Respondent argues on appeal that she had relatives willing to care for W.X. however, the record does not support her assertion. The caseworker testified that respondent did not provide her with any contact information for relatives or a possible family placement. The caseworker further testified that she asked about that information and that respondent and father were both given paperwork to fill out for relatives. Respondent indicated that she had no family in Michigan, and respondent never provided paperwork with information about relatives. The caseworker testified that if there were a suitable relative in Arizona, "the agency would look into placing the child there." Unlike *Mason*, W.X. was in foster care—not in relative placement. Because W.X. was not in relative placement and because respondent never provided information on her relatives, this case is distinguishable from *Mason*. Thus, respondent's argument is unavailing.

Because termination of parental rights need only be supported by a single statutory ground, we decline to consider the additional statutory ground that supported termination. See *In re HRC*, 286 Mich App at 461 ("Having concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision.").

## III.  BEST INTERESTS

Next, respondent argues on appeal that termination was not in W.X.'s best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012) (citations omitted). The minor child—not the parent—is the focus of the best-interest stage. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). In making its determination, the trial court may consider factors such as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (internal citations omitted). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. This Court reviews the trial court's decision regarding the children's best interests for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

Here, respondent was essentially absent for W.X.'s entire life, which indicates that there was not a bond. W.X., who tested positive for amphetamines and methamphetamine at birth, was almost immediately removed from respondent's care. Aside from respondent's initial contact at birth, she visited W.X. three to four times. W.X., who has spent essentially his entire life with his foster family, will be almost two years old when respondent is expected to be released from prison for child abuse. W.X. called his foster parents "Mom" and "Dad," he was bonded with them, and he was bonded with his foster brother. As the trial court noted, W.X. needed permanence and stability, which the adoptive foster family offered.

Respondent additionally argues that W.X. should be able to get to know his biological siblings. However, these siblings have a different father, and respondent's psychological evaluation and letter to the trial court seem to indicate that they are not in her care and custody. Further, W.X. never met any of these siblings. Given the lack of a bond, respondent's history of drug use and relapse, and W.X.'s need for stability and permanence, the trial court's finding that termination was in the minor child's best interests does not leave this Court with a "definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App at 459. Therefore, the trial court did not clearly err in finding that termination was in W.X.'s best interests. *In re Moss*, 301 Mich App at 90.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher